**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| COLUMBIAN BANK AND TRUST COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 07-CV-678-GKF-PJC ) |
| FLINT RIDGE PROPERTY OWNERS ASSOCIATION, INC., | ) ) ) |
| Defendant. | ) ) |

**O P I N I O N   A N D   O R D E R**

This matter comes before the Court on Defendant Flint Ridge Property Owners Association's Motion to Dismiss Plaintiff's Second Claim for Relief [Document No. 16].

**I. BACKGROUND**

On January 11, 2007, plaintiff Columbian Bank and Trust Company (the "Bank") became the record title owner of 378 lots of real estate within various Flint Ridge subdivisions in Delaware County, Oklahoma, including: (i) 188 lots in "Flint Ridge No. 1"; (ii) 170 lots in "Flint Ridge No. 4"; and (iii) 20 lots in "Flint Ridge No. 2."  Among these 378 lots, 358 have existing and installed "main water distribution lines," making water available to the owners of the residential lots once a water meter is installed and connected to the water distribution line.  This lawsuit arises from a dispute between the Bank and the Flint Ridge Property Owners Association, Inc. (the "Association") involving the cost of the "water connection fee" for the Bank's 358 lots that have water distribution lines.  The Bank contends that the water connection fee is either $150 or $200, depending on the lot in question.  However, the Association is requiring a minimum water connection fee of $1,200.00, according to the Bank.

The Bank contends that the lots within Flint Ridge No. 1 are subject to deeds of dedication and protective covenants, which provide in part:

> . . . When an Owner decides to connect to such water line, he must notify the Association and **pay to the Association a water connection fee of $150.00. Such fee shall include the cost of a water meter to be installed by the Association. The Association shall pay all cost[s] of making such connection from the meter to the main water distribution line** and no Owner shall be permitted to make such connection personally or through any other agent or employee.

(Complaint, ¶ 8, citing Deed of Dedication and Protective Covenants for Flint Ridge No. 1, emphasis added). The lots located within Flint Ridge No. 4 (in the Walnut Hill Area and the Berry Hill Area) and Flint Ridge No. 2 (in the Stone Ridge Area) are expressly subject to the provisions contained in the deeds of dedication and protective covenants for Flint Ridge No. 1, including the $150.00 water connection fee. (*Id.*, ¶¶ 21, 39). Supplemental deeds of dedication and protective covenants were created for the lots located within Flint Ridge No. 4 in the Indian Springs Area, Indian Valley Area, and Indian Point Area. These deeds and covenants provide that the water connection fee shall be $200.00. (*Id.*, ¶ 29).

The Bank asserts that the Association "refuses to honor the governing and applicable water connection fee[s]" and instead requires the Bank to pay a minimum water connection fee of $1,200.00 per lot. (*Id.*, ¶¶ 14, 26, 33, 44). The higher fee allegedly stems from a lease agreement between the Association and the Flint Ridge Rural Water District for Adair and Delaware Counties (the "RWD"). The RWD was formed for the purpose of administering and improving the Flint Ridge Water System because the RWD could obtain governmental funding which was unavailable to the Association. The Association leased the Water System to the RWD for a term of forty-two (42) years. The Association and the RWD agreed that:

> RWD shall have the right to set water usage rates, standby fees, tap fees, repair fees

>and such other fees as necessary and proper for operation and maintenance of the Water System. In this regard, [the Association] agrees to effect any amendments to the deeds of dedication as may be required.

(*Id.*, ¶¶ 11-12, citing Second Lease Agreement, p. 5). The Bank alleges that the deeds have never been amended to effectuate any new water usage rates, standby fees, tap fees, repair fees, or any other fees.

The Bank also contends that the Association's Board of Directors were unlawfully elected at the annual meeting held on May 26, 2007. The By-Laws of the Association provide that all "Members" – those persons who are record owners of at least one residential lot at Flint Ridge – are entitled to vote in Board elections, except "[t]he voting rights of a Member who is delinquent in payment of any Assessments, Dues, Costs, Fees or Fines shall be suspended during the period of delinquency." (*Id.*, ¶ 54, citing By-Laws, Article IV, ¶(c), p. 4). The Bank contends that the Association was not entitled to vote as a member at the annual meeting on May 26, 2007 because the Association never paid any dues for the respective lots it owned and, therefore, its voting rights were suspended. (*Id.*, ¶ 57). Nevertheless, the Association cast hundreds of votes at the meeting as the record title owner of hundreds of lots, which caused the Board (or certain members of the Board) to be unlawfully elected, according to the Bank. (*Id.*, ¶ 58).

The Bank filed this lawsuit on November 27, 2007, asserting the following three claims for relief:

(1) The entry of a declaratory judgment that the water connection fee – which includes the cost of a water meter and connection to the main water distribution lines – for lots within Flint Ridge No. 1 is $150.00 per lot; for lots within Flint Ridge No. 4 in the Walnut Hill Area and Berry Hill Area is $150.00 per lot; for lots within Flint Ridge No. 4 in the Indian Springs Area, the Indian

3

Valley Area, and the Indian Point Area is $200.00 per lot; and for lots within Flint Ridge No. 2 in the Stone Ridge Area is $150.00 per lot;

(2) A declaratory judgment that (a) the Board of Directors of the Association were unlawfully elected on May 26, 2007 in direct contravention of the terms of the governing By-Laws; and (b) any subsequent actions taken by the unlawfully elected Board of Directors on May 26, 2007 are *ultra vires* acts in that they are acts beyond the authority of the non-profit Association corporation; and

(3) An order of specific performance, requiring the Association to install a water meter (cost included) and that said meter be connected to the main water distribution lines (cost included), for each and every lot owned by the Bank within Flint Ridge Nos. 1, 2 and 4 (where there is an existing main water distribution line) upon receipt of the appropriate water connection fee of $150.00 or $200.00.

Pursuant to Rule 12(b)(6), the Association seeks dismissal of the Bank's second claim for relief. In support of its motion, the Association argues (i) the *ultra vires* doctrine has effectively been abolished by 18 O.S. § 1018 except in limited circumstances which are not applicable here; (ii) the Bank misapplies the *ultra vires* doctrine; (iii) the Bank's *ultra vires* claim depends on the false allegation that the entire Board was elected on May 26, 2007, when in truth, only two members of the seven-member board were elected that day; and (iv) there is no support for the Bank's claim that the Board's voting rights were suspended because the Bank does not allege that the Association was "delinquent" in payment of assessments.

## II. DISCUSSION

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court recently clarified this standard in *Bell Atlantic Corp. v. Twombly*, ruling that to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." --- U.S. ----, ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008), quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247, citing *Twombly*, 127 S.Ct. at 1965 (internal quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*.

While the Tenth Circuit Court of Appeals has recognized that the new *Twombly* standard is "less than pellucid," the Circuit Court has interpreted it as a middle ground between "heightened fact pleading," which is expressly rejected, and allowing complaints that are no more than "labels and conclusions," which courts should not allow. *Robbins*, 519 F.3d at 1247, citing *Twombly*, 127 S.Ct. at 1964, 1965, 1974. Accepting the allegations as true, they must establish that the plaintiff plausibly, and not just speculatively, has a claim for relief. *Robbins*, 519 F.3d at 1247. "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id*. at 1248.

As noted, the Bank's second claim for relief is two-fold. First, the Bank requests a declaratory judgment that the Association's Board of Directors were unlawfully elected on May 26, 2007 in direct contravention of the terms of the governing By-Laws. Second, the Bank seeks a declaratory judgment that any actions taken by the Board on or subsequent to the election of May 26, 2007 are *ultra vires* acts in that they are acts beyond the authority of the non-profit Association corporation. Each component of the Bank's claim is discussed below.

### A. The Alleged Unlawful Election of the Board

The Association's By-Laws provide that "[t]he voting rights of a member who is delinquent in payment of any Assessments, Dues, Costs, Fees or Fines shall be suspended during the period of delinquency." (Complaint, ¶ 54). The By-Laws further provide that the current list or record of members entitled to vote "shall be prima facie evidence as to who are the [m]embers entitled. . . to vote at any meeting of [m]embers." (*Id.*, ¶ 55). The Bank alleges that the Association "never paid any dues, for the respective lots it owned" and that the "official list of the '[m]embers entitled to vote'. . . did not list anywhere the 'Flint Ridge Property Owners Association.'" (*Id.*, ¶¶ 56, 57). As a result, the Bank claims that the Association was not entitled to vote as a member at the meeting held May 26, 2007. (*Id.*, ¶ 57). Yet, the Association did "cast hundreds of votes at the annual meeting as the record title owner of hundreds of lots." (*Id.*, ¶ 58).

The Court concludes that the Bank has presented enough allegations of fact that, taken as true, plausibly state a claim for a declaratory judgment that the Association's Board of Directors were unlawfully elected on May 26, 2007 in direct contravention of the terms of the governing By-Laws. The Association's assertion that only two of the seven Board members were actually elected at the May 26, 2007 meeting does not warrant dismissal of the Bank's claim. Issues of fact are not

6

properly before the Court at this juncture. Moreover, the defendant is sufficiently informed and put on notice of the actual grounds of the claim against it – that the Board members elected on May 26, 2007 were unlawfully elected because the Association was not entitled to vote under the provisions of the governing By-Laws.

The Association also argues that the Bank fails to establish that the Association was "delinquent" in its payment of dues, and even if it was delinquent, Oklahoma would not require the Association to carry out the useless acts of assessing and paying itself. In the Complaint, the Bank alleges that the Association "never paid any dues, for the respective lots it owned." (Complaint, ¶ 57). The Association argues that this statement alone is not sufficient to prove suspension of the Association's voting rights because suspension results only from "delinquency." (Motion to Dismiss, p. 9). According to the Association, "delinquency," means "due and unpaid at the time appointed by law or fixed by contract." (*Id.*). Because the Bank does not allege that the Association's property was ever assessed, there can be no delinquency, says the Association.

The Court disagrees. The Bank's allegation that the Association failed to pay dues is sufficient to allege "delinquency" and is sufficient under *Twombly* to put the Association on notice of the claims against it. Further, the Court declines to dismiss the claim because the Association's payment of dues would allegedly be a useless act. The Association's By-Laws require members to pay dues in order to retain voting privileges. The Court may not make any conclusions as to the reasonableness or usefulness of this provision of the By-Laws as applied to the Association at the pleadings stage.

Accordingly, the Association's motion to dismiss the first component of the Bank's second claim for relief is denied.

### B. Whether the Board's Actions are *Ultra Vires*

The Association is an Oklahoma corporation governed by the Oklahoma General Corporation Act, 18 O.S. §§ 1001-114 (the "Act"). Under the Act, the legislature has essentially abolished the *ultra vires* doctrine in Oklahoma, with three limited exceptions. The relevant statute, 18 O.S. § 1018, provides:

> No act of a corporation and no conveyance or transfer of real or personal property to or by a corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do such act or to make or receive such conveyance or transfer, but such lack of capacity or power may be asserted:
> 1. In a proceeding by a shareholder against the corporation to enjoin the doing of any act or acts or the transfer of real or personal property by or to the corporation. . . .
> 2. In a proceeding by the corporation, whether acting directly or through a receiver, trustee, or other legal representative, or through shareholders in a representative suit, against an incumbent or former officer or director of the corporation for loss or damage due to his unauthorized act; or
> 3. In a proceeding by the Attorney General to dissolve the corporation, or to enjoin the corporation from the transaction of unauthorized business.

18 O.S. § 1018.

Section 1018 is the exclusive means by which a litigant may assert that a corporation acted without capacity or authority, and an *ultra vires* claim cannot be extended to situations not expressed in the statute. *Total Access, Inc. v. Caddo Electric Cooperative*, 9 P.3d 95, 97 (Okla. Civ. App. 2000). The Association argues, and the Bank does not contest, that the circumstances enumerated in 18 O.S. § 1018 are not present here. The Bank does not seek to enjoin the corporation from acting, as provided in section 1018(1), and this proceeding is not brought by the corporation or the Attorney General, as provided in sections 1018(2) and (3). Thus, the Bank's claim for a declaratory judgment that any acts taken by the unlawfully elected Board of Directors, on or subsequent to May 26, 2007, are *ultra vires* acts in that they are acts beyond the authority of the non-profit Association

corporation is hereby dismissed without prejudice.[1]

Finally, it should be noted that the Bank devotes much of its brief to the argument that the Association is precluded from ever voting its lots (or shares) as a matter of law. The Bank cites various authorities for the proposition that a corporation cannot vote shares of its own stock. However, this argument goes beyond the claims asserted in the Complaint and is therefore outside the scope of the motion before the Court. In its second claim for relief, the Bank alleges that the Association was not entitled to vote at the May 26, 2007 meeting because its voting rights were suspended, pursuant to the By-Laws, for the Association's failure to pay dues. The Bank argues that as a result of the Association's unlawfully cast votes, the Board members were unlawfully elected and without authority to act. Nowhere in the Complaint does the Bank allege that the Board is precluded from voting its lots as a matter of law, irrespective of the Board's unlawful election or the Association's failure to pay dues. If the Board seeks to assert such a claim, it should request leave to amend its Complaint.

**WHEREFORE**, for the reasons set forth above, Defendant Flint Ridge Property Owners Association's Motion to Dismiss Plaintiff's Second Claim for Relief [Document No. 16] is hereby denied in part and granted in part.

**IT IS SO ORDERED** this 18th day of June 2008.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

---

[1] The Bank may request an opportunity to amend its claim if there are facts not originally pled in the Complaint which would invoke an *ultra vires* claim under 18 O.S. § 1018.